## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

TIMOTHY F. KANE, CARMINE ANGRISANI, )
JOANNE LAYFORD, GEORGE MILLER, )
and all others similarly ) COMPLAINT-CLASS ACTION
situated, )
)
       Named Plaintiffs, )
)
v. ) CIVIL ACTION NO.
)
HARBOR DEVELOPMENT, L.P., LIBERTY )
HARBOR DEVELOPMENT, INC., GARY )
WAXMAN, and THE FRYER LAW FIRM, P.C. )
in its capacity as Escrow Agent )
)
       Defendants. )

## NAMED PLAINTIFFS' VERIFIED COMPLAINT, MOTION FOR CLASS CERTIFICATION, AND REQUEST FOR TEMPORARY RESTRAINING ORDER

COME NOW Named Plaintiffs Timothy F. Kane, Carmine Angrisani, Joanne Layford, and George Miller (hereafter collectively "Named Plaintiffs") for themselves, and all other similarly situated members of the class herein described, and make and file this Complaint for declaratory judgment, emergency injunctive relief, and other damages, and show the Court as follows:

IDENTIFICATION OF THE PARTIES

1.

Named Plaintiff Timothy F. Kane is the Purchaser in a Unit Purchase Agreement entered into by Timothy F. Kane (hereinafter "Kane Purchaser") and Defendant Harbor Development, L.P. as Seller (hereinafter "Seller") on or around July 3, 2006, to purchase a certain condominium unit

known as Commodore Landing Unit A207 of Gateway I, a proposed but unbuilt Condominium located at United States Highway 17 in Brunswick, Georgia. See Exhibit "A" to Named Plaintiffs' Complaint for a copy of the Kane Agreement.

2.

Named Plaintiff Timothy F. Kane is a resident of N. Falmouth, Massachusetts.

3.

Named Plaintiffs Carmine Angrisani and Joanne Layford are the Purchasers in a Unit Purchase Agreement entered into by Angrisani and Layford (hereinafter "Angrisani/Layford Purchasers") and Defendant Harbor Development, L.P. as Seller (hereinafter "Seller") on or around June 26, 2006, to purchase a certain condominium unit known as Commodore Landing Unit B814 of Gateway I, a proposed but unbuilt Condominium located at United States Highway 17 in Brunswick, Georgia. See Exhibit "B" to Named Plaintiffs' Complaint for a copy of the Angrisani/Layford Agreement.

4.

Named Plaintiffs Carmine Angrisani and Joanne Layford are residents of Miller Place, New York.

5.

Named Plaintiff George Miller is the Purchaser in a Unit Purchase Agreement entered into by George Miller (hereinafter "Miller Purchaser") and Defendant Harbor Development, L.P. as Seller (hereinafter "Seller") on or around June 28, 2006, to purchase a certain condominium unit known as Commodore Landing Unit C-213 of Gateway I, a proposed but unbuilt Condominium located at United States Highway 17 in Brunswick, Georgia. See Exhibit "C" to Named Plaintiffs' Complaint for a copy of the Miller Agreement.

6.

Named Plaintiff George Miller is a resident of Hampton Bays, New York.

7.

Defendant Harbor Development, LP (hereinafter "Harbor Development") is a Georgia limited partnership created and operating under the laws of the State of Georgia which can be served through its registered agent, Corporation Process Company, 328 Alexander Street, Suite 10, Marietta Georgia 30060. Defendant Harbor Development is subject to the jurisdiction of this Court.

8.

Defendant Liberty Harbor Development, Inc. is the general partner of Defendant Harbor Development, LP. Defendant Liberty Harbor Development, Inc. is a Georgia corporation created and operating under the laws of the State of Georgia which can be served through its registered agent, Corporation Process Company, 328 Alexander Street, Suite 10, Marietta, Georgia. 30060. Defendant Liberty Harbor Development, Inc. is subject to the jurisdiction of this Court.

9.

Upon information and belief, Gary M. Waxman is a resident of the State of Ohio and is the Chairman of Defendant Harbor Development as well as the Chief Executive Officer of Defendant Liberty Harbor Development, Inc., both of which have been conducting business in Glynn County, Georgia. Upon information and belief, he may be served at his residence located at 14545 County Line Road, Chagrin Falls, Ohio 44022-4027.

10.

Defendants Harbor Development, L.P., Liberty Harbor Development, Inc., and Gary Waxman are collectively referred to herein as the "Liberty Harbor Defendants."

11.

Defendant The Fryer Law Firm, P.C. in its capacity as Escrow Agent (hereinafter "Defendant Fryer" or "Escrow Agent") is a Georgia domestic professional corporation created and operating under the laws of the State of Georgia which can be served through its registered agent, Clara Fryer at 70 Lenox Pointe, Atlanta, Georgia, 30324 in Fulton County. Defendant Fryer is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

### 12.

Named Plaintiffs respectfully incorporates all preceding paragraphs of this Complaint as if repeated here verbatim.

### 13.

Jurisdiction and venue are proper in this court pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1367, Federal Rule of Civil Procedure 23, and 28 U.S.C. § 1391.

## CLASS ACTION ALLEGATIONS

### 14.

This action is brought by Named Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under the provisions of Federal Rule of Civil Procedure 23 for declaratory judgment, emergency injunctive relief, damages, and relief incident and subordinate thereto, including punitive damages, attorney's fees, and costs.

15.

The class so represented by Named Plaintiffs in this action, and of which Named Plaintiffs are members, consists of persons or entities that entered into agreements to purchase condominium units in a development known as Liberty Harbor located in Brunswick, Georgia and paid funds into escrow as deposits on the aforementioned condominium units and who have been defrauded as a result of these agreements and incidents related thereto and are in danger of losing their escrowed funds as a direct result of the Liberty Harbor Defendants' actions.

16.

The exact number of members of the class, as herein identified and described, is not known, but it is estimated that there are not less than one hundred (100) members.

17.

The class is so numerous that joinder of all individual members herein is impracticable.

18.

There are common questions of law and fact in the action that relate to and affect the rights of each member of the class and the relief sought is common to the entire class, namely that each Named Plaintiff and others similarly situated as Purchasers under these agreements has paid considerable amounts of earnest money to be held by an escrow agent, and the Liberty Harbor Defendants or Seller has fraudulently induced such Purchasers to either (1) breach the agreement and forfeit such earnest money pursuant to the agreement or (2) to pay additional significant amounts of earnest money to be held by the escrow agent while Seller has made fraudulent misrepresentations and has failed to perform under the agreements, and such Purchasers are now in danger of losing their escrowed funds as a direct result of Sellers' actions.

19.

The claims of Named Plaintiffs, as set forth herein, who are representatives of the class herein are typical of the claims of the class, in that the claims of all members of the class, including Named Plaintiffs, depend on the showing of the acts and/or omissions of the Liberty Harbor Defendants giving rise to the right of Named Plaintiffs to the relief sought herein. There is no conflict as between any individual Named Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein set forth.

20.

This action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23 (b)(1)(A) because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for any party opposing the class.

21.

This action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23 (b)(1)(B) in that prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

22.

This action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23 (b) (2) in that the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

23.

This action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23 (b)(3) inasmuch as the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as supported by the allegations set forth below pursuant to Southern District of Georgia Local Rule 23:

(A) Named Plaintiffs and all putative class members are from all over the country and would have varying levels of interest in individually controlling the prosecution or defense of separate actions because of their differing access to courts that could exercise jurisdiction over such matters;

(B) Named Plaintiffs are not involved in any litigation concerning this controversy, although some other putative members of the class have initiated litigation in the Superior Court of Glynn County as well as the Superior Court of Cobb County in attempts to recover their escrowed funds, but no adjudication of any of their claims has been reached at this time;

(C) It is desirable to concentrate the litigation of the claims in the Southern District of Georgia because this matters involves diverse parties from differing states and jurisdictions, but this is the jurisdiction where the Liberty Harbor Defendants had their principal place of business and is where most of the events took place which gave rise to this action, and thus, many of the witnesses and much of the evidence is located here in this forum, and both the Liberty Harbor Defendants, Defendant Fryer as  the "Escrow Agent," and Named Plaintiffs and all others similarly situated were aware that they could be litigating in this forum at some time because they chose to enter into or participate in contracts for the purchase, sale, and development of real

property located in this forum and the escrow of funds related thereto;

(D) Named Plaintiffs and their counsel are not aware of any likely difficulties in managing this matter as a class action.

24.

Named Plaintiffs are the representative parties for the class, and are able to, and will, fairly and adequately protect the interests of the class because their interests are very similar, if not identical to those of the other putative members of the class, they are over the age of majority and are of sound mind and able to articulate their claims on behalf of themselves and on behalf of the class.

25.

The attorneys for Named Plaintiffs are experienced in class action litigation and capable of litigation in the field of real property contracts and have successfully represented claimants in other litigation of this nature. Of the attorneys designated as counsel for Named Plaintiffs, those undersigned attorneys will actively conduct and be responsible for Named Plaintiffs' case herein as well as the case of all other members of the class.

26.

Regarding diversity jurisdiction for this class action, all Named Plaintiffs are diverse to all Defendants, and at least two of the Named Plaintiffs, Carmine Angrisani and Joanne Layford, meet the jurisdictional amount requirement outright by the fact that they have in excess of $90,000 in escrowed funds at issue in this matter. Certainly, the damages owed to each of the Named Plaintiffs combined with the amounts of escrowed funds they have at issue in this matter places them substantially over the jurisdictional amount.

27.

The class so represented by Named Plaintiffs in this action, and of which Named Plaintiffs are members, consisting of persons or entities that entered into agreements to purchase condominium units in a development known as Liberty Harbor located in Brunswick, Georgia and paid funds into escrow as deposits on the aforementioned condominium units and who have been defrauded as a result of these agreements and incidents related thereto and are in danger of losing their escrowed funds as a direct result of the Liberty Harbor Defendants' actions should be certified as a class.   In support of the foregoing allegations, Named Plaintiffs show the following questions of law and fact that are common to the class:

## FACTUAL ALLEGATIONS

28.

Named Plaintiffs respectfully incorporates all preceding paragraphs of this Complaint as if repeated here verbatim.

29.

### *Purchase and Sale Agreements' Provisions*

Upon information and belief, all purchase and sale agreements entered into by Named Plaintiffs and others similarly situated contained the following provisions set forth herein.

The Agreements were entered into by a "Purchaser" and Defendant Harbor Development, LP as "Seller" to purchase a certain condominium unit located in Gateway I, a proposed but unbuilt Condominium located at United States Highway 17 in Brunswick, Georgia.  See Exhibits "A," "B," and "C" to Named Plaintiffs' Complaint.

30.

Defendant Liberty Harbor Development, Inc. is the general partner of Defendant Harbor Development.

31.

Defendant Gary Waxman is the Chairman of Defendant Harbor Development and is the Chief Executive Officer of Defendant Liberty Harbor Development, Inc.

32.

In Section 1 of the Agreement, "Condominium" is defined as "Gateway I" and "expected to consist of two buildings, Commodore Building and East Promenade Building." See id.

33.

In Section 1 of the Agreement, the Purchaser's "Unit" is defined. See id.

34.

Pursuant to Section 2 of the Agreement entitled "Purchase Price," the Purchase Price of the Unit is set forth. See id.

35.

Pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Purchaser was to deposit earnest money with Defendant Fryer as "Escrow Agent" which represented roughly ten percent (10%) of the Unit Purchase Price.  This amount shall hereafter be referred to as the "Initial Deposit." See id.

36.

Also pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Purchaser was to make an additional deposit which represented an additional 10% of the purchase price (hereinafter "Additional Deposit") to Defendant Fryer as "Escrow Agent" within ten (10) days after Purchaser received notice from Seller that construction of the Condominium has commenced.  See id.

37.

Also pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," the "Additional Deposit" was to become part of the "Earnest Money." See id.

38.

Also pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," once the "Additional Deposit" is paid, the total earnest money paid by Purchaser shall equal at least twenty percent (20%) of the Unit Purchase Price. See id.

39.

Also pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," if Purchaser fails to deliver the Additional Deposit within ten (10) days of the notice from Seller that construction of the Condominium has commenced, Seller shall have the right to terminate the Agreement and Purchaser shall forfeit all earnest money already paid, pursuant to Section 13(b) of the Agreement. See id.

40.

Section 2 (a) of the Agreement entitled "Earnest Money" contains a paragraph which states that:

> Escrow Agent shall disburse the Earnest Money only as follows: (a) upon the failure of the parties to enter into a binding agreement; (b) at Closing; (c) upon a written agreement signed by all parties having an interest in the funds; (d) upon order of a court or arbitrator having jurisdiction over any dispute involving the Earnest Money; (e) upon Purchaser's voiding of this Agreement pursuant to Section 11(a); (f) upon a default of this Agreement pursuant to Section 13; (g) upon Seller's termination of this Agreement pursuant to Section 3(b) below; or (h) upon a reasonable interpretation of this Agreement by the Escrow Agent. Prior to disbursing the Earnest Money pursuant to a reasonable interpretation of this Agreement, Escrow Agent shall give all parties fifteen (15) days notice, stating to whom the disbursement will be made. Any party may object in writing to the disbursement, provided the objection is received by the Escrow Agent prior to the end of the fifteen (15) day notice period. All objections not raised in a timely manner shall be waived.

In the event a timely objection is made, Escrow Agent shall consider the objection and shall do all or any combination of the following: (i) hold the Earnest Money for a reasonable period of time to give the parties the opportunity to resolve the dispute; (ii) disburse the Earnest Money and do notify all parties; and/or (iii) interplead the Earnest Money into a court of competent jurisdiction. Escrow Agent shall be reimbursed for and may deduct its cost and expenses, including reasonable attorney's fees, from any funds interpleaded. The prevailing party in the interpleader action shall be entitled to collect from the other party the costs and expenses reimbursed to Escrow Agent. No party shall seek damages from Escrow Agent (nor shall Escrow Agent be liable for same) for any matter related to the performance of Escrow Agent's duties under this Agreement. If Purchaser breaches Purchaser's obligations or warranties herein, Escrow Agent may disburse the Earnest Money to Seller.

41.

Section 13 of the Agreement entitled "Default" states in subsection (a) entitled "By Seller"

that:

If Seller fails to comply with or perform any of the conditions to be complied with or any of the covenants, agreements, or obligations to be performed by Seller under the terms and conditions of this Agreement, then Purchaser shall provide Seller with written notice of such default, and if Seller, within fifteen (15) days from receipt of such written notice, shall fail to take action that would cure the default within a reasonable period of time, and if Purchaser has performed all of Purchaser's obligations hereunder, Purchaser shall be entitled to terminate this Agreement by giving written notice to Seller, whereupon the Earnest Money plus Earned Interest shall be immediately returned to Purchaser, and all further rights, obligations, and liabilities created hereunder shall be deemed terminated and of no further force and effect.

Section 1(a) states that "Seller expects that both buildings [of the Condominium] shall be completed by December 31, 2010," and Section 3 entitled "Closing" states that "the "Closing of the purchase and sale contemplated by this Agreement shall take place on or before seven (7) days following notice from Seller that a certificate of occupancy for the Unit has been issued by the local governing authority and that the Governing Documents have been recorded. . . ," and "in no event shall Closing occur any later than December 31, 2010."

*Named Plaintiff Kane's Agreement Individual Provisions*

The allegations in this section set forth the individual provisions contained in Named Plaintiff Kane's Purchase and Sale Agreement in addition to the common ones set forth above.

42.

An Agreement was entered into by Named Plaintiff Timothy F. Kane as "Purchaser" and Defendant Harbor Development, LP as "Seller" on or around July 3, 2006 to purchase a certain condominium unit known as Commodore Landing Unit A207 of Gateway I, a proposed but unbuilt Condominium located at United States Highway 17 in Brunswick, Georgia.  See Exhibit "A" to Named Plaintiffs' Complaint.

43.

In Section 1 of the Agreement, "Unit" is defined as "Commodore Unit A207 of Gateway I, a Condominium." See id.

44.

Pursuant to Section 2 of the Agreement entitled "Purchase Price," the Purchase Price of the Unit is $495,000.00. See id.

45.

Pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Named Plaintiff Kane was to deposit $49,500.00 in earnest money with Defendant Fryer as "Escrow Agent" which represented roughly ten percent (10%) of the Unit Purchase Price.  This amount shall hereafter be referred to as the "Initial Deposit." See id.

46.

Also pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Named Plaintiff Kane was to make an additional deposit of $49,500.00 (hereinafter "Additional Deposit") to

Defendant Fryer as "Escrow Agent" within ten (10) days after Named Plaintiff Kane received notice from Seller that construction of the Condominium has commenced.  See Exh. "A."

47.

## *Named Plaintiffs Angrisani and Layford's Agreement Provisions*

The allegations in this section set forth the individual provisions contained in Named Plaintiffs Angrisani and Layford's Purchase and Sale Agreement in addition to the common ones set forth above.

48.

An Agreement was entered into by Named Plaintiffs Angrisani and Layford as "Purchaser" and Defendant Harbor Development, LP as "Seller" on or around June 26, 2006 to purchase a certain condominium unit known as Commodore Landing Unit B814 of Gateway I, a proposed but unbuilt Condominium located at United States Highway 17 in Brunswick, Georgia.  See Exhibit "B" to Named Plaintiffs' Complaint.

49.

In Section 1 of the Agreement, "Unit" is defined as "Commodore Unit B814 of Gateway I, a Condominium." See id.

50.

Pursuant to Section 2 of the Agreement entitled "Purchase Price," the Purchase Price of the Unit is $900,000.00. See id.

51.

Pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Named Plaintiffs Angrisani and Layford were to deposit $90,000.00 in earnest money with Defendant Fryer as

"Escrow Agent" which represented roughly ten percent (10%) of the Unit Purchase Price. This amount shall hereafter be referred to as the "Initial Deposit." See id.

52.

Also pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Named Plaintiffs Angrisani and Layford were to make an additional deposit of $90,000.00 (hereinafter "Additional Deposit") to Defendant Fryer as "Escrow Agent" within ten (10) days after Named Plaintiffs Angrisani and Layford received notice from Seller that construction of the Condominium has commenced. See Exh. "B."

### Named Plaintiff Miller's Agreement Provisions

The allegations in this section set forth the individual provisions contained in Named Plaintiff Miller's Purchase and Sale Agreement in addition to the common ones set forth above.

53.

An Agreement was entered into by Named Plaintiff George Miller as "Purchaser" and Defendant Harbor Development, LP as "Seller" on or around June 28, 2006 to purchase a certain condominium unit known as Commodore Landing Unit C-213 of Gateway I, a proposed but unbuilt Condominium located at United States Highway 17 in Brunswick, Georgia. See Exhibit "C" to Named Plaintiffs' Complaint.

54.

In Section 1 of the Agreement, "Unit" is defined as "Commodore Unit C-213 of Gateway I, a Condominium." See id.

55.

Pursuant to Section 2 of the Agreement entitled "Purchase Price," the Purchase Price of the

Unit is $295,000.00. <u>See</u> <u>id.</u>

56.

Pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Named Plaintiff Miller was to deposit $29,500.00 in earnest money with Defendant Fryer as "Escrow Agent" which represented roughly ten percent (10%) of the Unit Purchase Price. This amount shall hereafter be referred to as the "Initial Deposit." <u>See</u> <u>id.</u>

57.

Also pursuant to Section 2 (a) of the Agreement entitled "Earnest Money," Named Plaintiff Miller was to make an additional deposit of $29,500.00 (hereinafter "Additional Deposit") to Defendant Fryer as "Escrow Agent" within ten (10) days after Named Plaintiff Miller received notice from Seller that construction of the Condominium has commenced. <u>See</u> Exh. "C."

*The Liberty Harbor Defendants' Conduct*

58.

On August 4, 2008 after the Liberty Harbor Defendants had entered into the purchase and sale agreements for the sales of the condominium units to Named Plaintiffs and others similar situated, Defendant Harbor Development applied for a building permit from the City of Brunswick for "A6, Gateway II, 7 story, 50 unit condo @ Liberty Harbor" on parcel 01-07415 at 180 Admiralty Way. See City of Brunswick Building Permit Application 2765, a copy of which is attached hereto as Exhibit "D."

59.

On August 5, 2008, the City of Brunswick issued building permit 2765 for "foundation" to owner Liberty Harbor, contractor Harbor Development, at location 180 Admiralty Way. See City of Brunswick Building Permit 2765, a copy of which is attached as Exhibit "E."

60.

On August 11, 2008, Defendant Harbor Development, L.P., through its Chairman Defendant Gary Waxman, sent a letter to Named Plaintiffs and others similarly situated which stated, in pertinent part, that:

> NOTICE IS HEREBY GIVEN that construction of the Condominium has commenced and in accordance with Section 2(a) of the Agreement, the Additional Deposit . . . is now due. Accordingly, please remit the Additional Deposit, in the amount of [(different for each purchaser)] to the Escrow Agent . . . within ten (10) days of this notice.
> . . .
> As set forth in Section 2(a) of the Agreement, if you should fail to remit the full amount of the Additional Deposit to the Escrow Agent within ten (10) days of receipt of this notice, Seller has the right to terminate the Agreement, and you will forfeit all Earnest Money already paid. See August 11, 2008 Letters to Purchasers, copies of which are attached hereto as Exhibit "F".

61.

On December 18, 2008, Defendant Harbor Development applied for a building permit from the City of Brunswick for "A1, Gateway III condo @ Liberty Harbor" on parcel 01-07396 at 0 Commodore Way.  See City of Brunswick Building Permit Application 2819, a copy of which is attached hereto as Exhibit "G."

62.

On January 7, 2009, the City of Brunswick issued building permit 2819 for "foundation only" to owner Liberty Harbor, contractor Double D Construction, at location 0 Commodore Way. See City of Brunswick Building Permit 2819, a copy of which is attached as Exhibit "H."

63.

Construction of the Condominium, whether referred to as the Commodore Building, East Promenade Building, A6, A1, 180 Admiralty Way, 0 Commodore Way, Gateway I, Gateway II, or Gateway III, has not commenced as of the date of the filing of this action and had not commenced on August 11, 2008 when the letters attached as Exhibit "F" were sent to Named Plaintiffs and others similarly situated.

64.

A City of Brunswick building permit "shall become invalid unless the work on the site authorized by such permit is commenced within 180 days after its issuance. . . ." See 2006 International Building Code, Section 105 "Permits," subsection 105.5 "Expiration," a copy of which is attached hereto as Exhibit "I."

65.

As of March 19, 2009, building permit 2765 had expired, and the City of Brunswick has

refused to extend such permit. See Affidavits of Arne Glaser and Allison Wells, dated August 13, 2009, attached hereto as Exhibit "J."

66.

The letters attached as Exhibit "F" specifically state that "NOTICE IS HEREBY GIVEN that construction of the Condominium has commenced." This written statement was a fraudulent misrepresentation because construction had not commenced at that time and has still not commenced.

67.

The letters attached as Exhibit "F" also informed Named Plaintiffs that "in accordance with Section 2(a) of the Agreement, the Additional Deposit . . . is now due. Accordingly, please remit the Additional Deposit, in the amount of [$ (different for each Purchaser)] to the Escrow Agent . . . within ten (10) days of this notice."

68.

Section 2(a) of the Agreement required Named Plaintiffs to deposit an additional ten percent (10%) of the purchase price as additional earnest money within ten (10) days after receipt of the notice from the Liberty Harbor Defendants that construction of the Condominium has commenced. Because the Liberty Harbor Defendants fraudulently misrepresented that construction had commenced in the letter purportedly providing such notice, the Liberty Harbor Defendants fraudulently required Named Plaintiffs to comply with Section 2(a) of the Agreement.

69.

The letters attached as Exhibit "F" further state that "As set forth in Section 2(a) of the Agreement, if you should fail to remit the full amount of the Additional Deposit to the Escrow Agent within ten (10) days of receipt of this notice, Seller has the right to terminate the Agreement, and you

will forfeit all Earnest Money already paid."

70.

The Liberty Harbor Defendants fraudulently misrepresented that construction had commenced in the letter purportedly providing such notice and fraudulently required Named Plaintiffs to comply with Section 2(a) of the Agreement, and thus, the Liberty Harbor Defendants fraudulently stated that if Named Plaintiffs did not comply with Section 2(a) of the Agreement and pay the additional deposit, then the Liberty Harbor Defendants had the right to terminate the Agreement and that Named Plaintiffs would forfeit all earnest money already paid.

71.

*Purchaser Kane's Conduct*

Named Plaintiff Kane deposited an "Initial Deposit" of $37,250.00 to be held by Defendant Fryer as "Escrow Agent" for Named Plaintiff Kane.  See Kane Escrow Notification, attached hereto as Exhibit "K."

72.

Named Plaintiff Kane received the letter dated August 11, 2008 from the Liberty Harbor Defendants.  See Exh. "F."

73.

Named Plaintiff Kane refused to deposit the "Additional Deposit" with Defendant Fryer as "Escrow Agent."

74.

The Liberty Harbor Defendants sent Purchaser a letter dated January 7, 2009, indicating his breach of contract and demanding payment of $61,750.00 within ten days.  See Letter from the

Liberty Harbor Defendants to Kane dated January 7, 2009, a copy of which is attached as Exhibit "L."

### 75.

#### *Purchaser Angrisani/Layford's Conduct*

Named Plaintiffs Angrisani and Layford deposited an "Initial Deposit" of $90,000.00 with Defendant Fryer as "Escrow Agent" on or around August of 2006. See Angrisani/Layford Escrow Notification, attached hereto as Exhibit "M."

### 76.

Named Plaintiffs Angrisani and Layford received the letter dated August 11, 2008 from the Liberty Harbor Defendants. See Exh. "F."

### 77.

Named Plaintiffs Angrisani and Layford refused to deposit the "Additional Deposit" with Defendant Fryer as "Escrow Agent."

### 78.

#### *Named Plaintiff Miller's Conduct*

Named Plaintiff Miller deposited an "Initial Deposit" of $29,500.00 with Defendant Fryer as "Defendant Fryer as Escrow Agent" on or around Spring of 2006.

### 79.

Named Plaintiff Miller received the letter dated August 11, 2008 from the Liberty Harbor Defendants, and accordingly, Named Plaintiff Miller deposited the "Additional Deposit" with the Defendant Fryer as "Escrow Agent" on or around August 15, 2008.

### 80.

*Defendant Fryer as Escrow Agent's Position*

Defendadnt Fryer as "Escrow Agent" has stated that it would continue to hold Named Plaintiffs' and others similarly situated's funds because it had not received instructions from Defendant Harbor Development to return the funds to Named Plaintiffs. <u>See</u> March 17, 2009 Ingram-Tello letter, a copy of which is attached hereto as Exhibit "N."

81.

*The Liberty Harbor Defendants' Subsequent Conduct*

The Liberty Harbor Defendants sent other purchasers who did not pay an Additional Deposit a Notice of Default dated on or around August 29, 2008 which stated that:

> This letter is written to notify Purchaser that it is in default under the Agreement by virtue of Purchaser's failure to remit the Additional Deposit (as such term is herein below defined) as requested by that certain Additional Deposit Notice . . . .Specifically, Purchaser failed to remit $_____ (the "Additional Deposit") to the Escrow Agent, The Fryer Law Firm, 70 Lenox Pointe, Atlanta, Georgia 30324, within ten (10) days of receipt of the Notice pursuant to Paragraph 2(a) of the Agreement. NOTICE IS HEREBY GIVEN that if Purchaser's default is not cured by Purchaser's remitting of the Additional Deposit to the above referenced Escrow Agent within twenty (20) days from Purchaser's receipt of this written notice, Seller will have no choice but to exercise its right to terminate the Agreement and retain the Earnest Money pursuant to Paragraphs 2(a) and 13(b) of the Agreement. <u>See</u> August 29, 2008 Notice of Default, a copy of which is attached as Exhibit "O."

82.

In response to inquiries on behalf of putative class members, counsel for the Liberty Harbor Defendants then sent counsel for Named Plaintiffs a letter dated March 19, 2009 that stated, in pertinent part, that:

> For certain, under the Unit Purchase Agreement ("Contract") between the Purchaser and [Defendant Harbor Development (HD)], HD must complete the Building housing their unit on or before December 31, 2010. . . .
>
> Furthermore, construction of the Building has commenced under the terms of the contract, so no fraud has occurred. To date, HD has invested more than six

million dollars (>$6,000,000.00) in site preparation work at Liberty Harbor. A lift station, which will be used by the Building, has also been constructed. Additionally, all engineering has been completed and the building plans have been approved by the local authorities; a construction fence has been erected; and the pads have been set and stone laid in preparation for driving the piles and laying the foundations. See March 19, 2009 Letter, a copy of which is attached hereto as Exhibit "P."

83.

Pursuant to the Liberty Harbor Defendants' Property Report, water and sewer construction are separately enumerated requirements, and therefore, construction of the lift station does not constitute commencement of construction of the Condominium as defined in the Agreement. See Property Report, a copy of which is attached hereto as Exhibit "Q."

84.

The site preparation work and engineering done have been for the whole project and do not constitute commencement of construction of the Condominium as defined in the Agreement.

85.

Furthermore, on information and belief, the March 19, 2009 letter is untrue because as of July 8, 2010, less than six (6) months until the buildings are supposed to be complete, building plans have not been approved, a construction fence has not been erected for the Commodore Building, and no foundation work has commenced.

86.

As of July 8, 2010, the Liberty Harbor Defendants have not made any progress at all towards development of the Condominium or construction thereof.

87.

The Liberty Harbor Defendants have not applied for any building permits since the "foundation" permits expired.

88.

Upon information and belief, the Liberty Harbor Defendants do not intend to attempt to construct the Condominium or Named Plaintiffs' units for various reasons, including but not limited to: inability to secure the adequate financing, a perception on part of the Liberty Harbor Defendants that the purchasers would not be able to or willing to close on the units, and the practical impossibility of constructing the units between now and December 31, 2010.

89.

Upon information and belief, the Liberty Harbor Defendants are in default on their existing financing and their lenders could attempt to seize the escrowed funds at any time. See Deed to Secure Debt, Assignment of Leases and Rents, and Security Agreement between Harbor Development L.P. and Kennedy Funding, Inc. a copy of which is attached as Exhibit "R."

90.

Upon information and belief, the Liberty Harbor Defendants are grossly in debt and could declare bankruptcy at any time and attempt to pull the escrowed funds into their bankruptcy matter.

91.

Upon information and belief, the Liberty Harbor Defendants' properties at Liberty Harbor have been foreclosed on and/or condemned and tax liens have been entered against the Liberty Harbor Defendants' properties at Liberty Harbor. See samples of public records reflecting the same, attached as Exhibit "S."

92.

In news articles, the Liberty Harbor Defendants have indicated their intention to not fulfill their obligations under Named Plaintiffs' contracts and to renegotiate their obligations.

See Brunswick News Articles dated October 23, 2009 and November 9, 2009, copies of which are attached as Exhibit "T."

93.

The Liberty Harbor Defendants have attempted to renegotiate with purchasers for less than full return of purchasers' escrowed funds, citing litigation and inability to secure financing to complete the project, among other things, as their reasons. See Email from the Liberty Harbor Defendants to a putative class member dated June 29, 2010, a copy of which is attached as Exhibit "U."

## COUNT ONE—REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(b)

94.

Named Plaintiffs respectfully incorporate all preceding paragraphs of this Complaint as if repeated here verbatim.

95.

As shown from the facts contained herein in this verified complaint, unless Named Plaintiffs and all others similarly situated are immediately certified as a class on a temporary basis, through a temporary restraining order, for purposes of all Named Plaintiffs and all others similarly situated being uniformly treated and protected, then Named Plaintiffs and all others similarly situated will suffer immediate and irreparable and potentially disparate injury, loss, and damage in addition to those injuries, losses, and damages already suffered because Named Plaintiffs and all others similarly situated are in jeopardy of having their escrowed funds being

seized by the Liberty Harbor Defendants' lenders or being made a part of the Liberty Harbor Defendants' bankruptcy estate(s) or otherwise being further removed from the possession of Named Plaintiffs and all others similarly situated.

96.

As shown from the facts contained herein in this verified complaint, unless Named Plaintiffs and all others similarly situated receive an immediate declaration, through a temporary restraining order, from this Court that all of the funds held in escrow by Defendant Fryer as "Escrow Agent" on behalf of Named Plaintiffs and all others similarly situated are assets of Named Plaintiffs and all others similarly situated, are not the assets of any Defendants in any way, cannot be made a part of any bankruptcy matter of any Defendants or any other related entity, cannot be seized by any lender of any Defendants, and cannot be jeopardized by any conduct of any Defendants, Named Plaintiffs and all others similarly situated will suffer immediate and irreparable injury, loss, and damage in addition to those injuries, losses, and damages already suffered because Named Plaintiffs and all others similarly situated are in jeopardy of having their escrowed funds being seized by the Liberty Harbor Defendants' lenders or being made a part of the Liberty Harbor Defendants' bankruptcy estate(s) or otherwise being further removed from the possession of Named Plaintiffs and all others similarly situated.

97.

As shown from the facts contained herein in this verified complaint, unless Named Plaintiffs and all others similarly situated are then certified as a class on a permanent basis, through a preliminary and permanent injunction, for purposes of all Named Plaintiffs and all others similarly situated being uniformly treated and protected, then Named Plaintiffs and all others similarly situated will suffer immediate and irreparable and potentially disparate injury,

loss, and damage in addition to those injuries, losses, and damages already suffered because Named Plaintiffs and all others similarly situated are in jeopardy of having their escrowed funds being seized by the Liberty Harbor Defendants' lenders or being made a part of the Liberty Harbor Defendants' bankruptcy estate(s) or otherwise being further removed from the possession of Named Plaintiffs and all others similarly situated.

98.

As shown from the facts contained herein in this verified complaint, unless the Liberty Harbor Defendants are thereafter restrained, through a preliminary and permanent injunction, from refusing to authorize the Defendant Fryer as "Escrow Agent" to release the full amounts of the escrowed funds held on behalf of Named Plaintiffs and others similarly situated and ordered to provide written authorization to Defendant Fryer as "Escrow Agent" for Defendant Fryer as "Escrow Agent" to immediately release the escrowed funds held on behalf of Named Plaintiffs and others similarly situated to the registry of the Court or to Named Plaintiffs' counsel's trust account for appropriate disbursement to Named Plaintiffs and others similarly situated, Named Plaintiffs and all others similarly situated will suffer immediate and irreparable injury, loss, and damage in addition to those injuries, losses, and damages already suffered because Named Plaintiffs and all others similarly situated are in jeopardy of having their escrowed funds being seized by the Liberty Harbor Defendants' lenders or being made a part of the Liberty Harbor Defendants' bankruptcy estate(s) or otherwise being further removed from the possession of Named Plaintiffs and all others similarly situated.

99.

As shown from the facts contained herein in this verified complaint, unless Defendant Fryer as "Escrow Agent" is ordered, through a preliminary and permanent injunction, to release

the full amounts of the escrowed funds held on behalf of Named Plaintiffs and others similarly situated to the registry of the Court or to Named Plaintiffs' counsel's trust account for appropriate disbursement to Named Plaintiffs and others similarly situated, Named Plaintiffs and all others similarly situated will suffer immediate and irreparable injury, loss, and damage in addition to those injuries, losses, and damages already suffered because Named Plaintiffs and all others similarly situated are in jeopardy of having their escrowed funds being seized by the Liberty Harbor Defendants' lenders or being made a part of the Liberty Harbor Defendants' bankruptcy estate(s) or otherwise being further removed from the possession of Named Plaintiffs and all others similarly situated.

100.

If The Liberty Harbor Defendants are allowed to continue to withhold their authorization for the release of such funds or to declare bankruptcy or to jeopardize the escrowed funds in any way, then such actions will only increase the injury, loss, and damages to Named Plaintiffs and all others similarly situated.

101.

If Defendant Fryer as "Escrow Agent" is allowed to continue to withhold the escrowed funds, then such actions will only increase the injury, loss, and damages to Named Plaintiffs and all others similarly situated because Named Plaintiffs and all others similarly situated are in jeopardy of having their escrowed funds being seized by the Liberty Harbor Defendants' lenders or being made a part of the Liberty Harbor Defendants' bankruptcy estate(s) or otherwise being further removed from the possession of Named Plaintiffs and all others similarly situated.

102.

Named Plaintiffs and all others similarly situated have made good faith efforts to notify the Liberty Harbor Defendants and Defendant Fryer of their intention to seek said Temporary Restraining Order.

103.

Named Plaintiffs, on behalf of themselves and all others similarly situated, request a Temporary Restraining Order to prevent any further harm to Named Plaintiffs and all others similarly situated Plaintiff, and in the instance that such Temporary Restraining Order is issued, that a hearing for a preliminary and permanent injunction be held at the Court's earliest convenience.

## COUNT TWO--DECLARATORY JUDGMENT

104.

Named Plaintiffs respectfully incorporates all preceding paragraphs of this Complaint as if repeated here verbatim.

105.

By virtue of the facts set forth herein an actual controversy exists between Named Plaintiffs and Defendants. This is a proceeding seeking a Declaratory Judgment by virtue of the provisions of 28 U.S.C. § 2201.

106.

As set forth above, Named Plaintiffs shows that they are entitled to a declaration of their rights under the Agreement entered into by the parties.

107.

Named Plaintiffs allege that they are entitled to a declaration that all of the funds held in escrow by Defendant Fryer as "Escrow Agent" on behalf of Named Plaintiffs and all others similarly situated remain assets of Named Plaintiffs and all others similarly situated, are not the assets of any Defendants in any way, cannot be made a part of any bankruptcy matter of any Defendants or any other related entity, cannot be seized by any lender of any Defendants, and cannot be jeopardized by any conduct of any Defendants.

108.

Named Plaintiffs further allege that they are entitled to a declaration that they are entitled to a full refund of all earnest monies plus all interest paid to Seller under the Agreement due to the Liberty Harbor Defendants' wrongful conduct in making Named Plaintiffs incur expense in attempting to protect their escrowed funds.

## COUNT THREE—DEMAND FOR RETURN OF ALL EARNEST MONEY

109.

Named Plaintiffs respectfully incorporates all preceding paragraphs of this Complaint as if repeated here verbatim.

110.

According to Sections 2 (a) of the Agreement entitled "Earnest Money," Defendant Fryer as "Escrow Agent" shall disburse the Earnest Money "(f) upon a default of this Agreement pursuant to Section 13." <u>See</u> Exhibits "A" and "B."

111.

Defendant Harbor Development as Seller defaulted under Section 13 of the Agreement by failing to comply with or perform any of the conditions to be complied with or any of the covenants, agreements, or obligations to be performed by Seller under the terms and conditions of the Agreement by fraudulently inducing Purchaser to deposit Additional Deposits of earnest money based on false statements and fraudulent representations.

112.

Counsel for Named Plaintiffs has informed the Liberty Harbor Defendants of their default, and the Liberty Harbor Defendants have not made any attempt to cure the default within the allowed ten (10) day period.

113.

Counsel for Named Plaintiffs has requested the return of the escrowed funds from Defendant Fryer as "Escrow Agent" and invited Defendant Fryer as "Escrow Agent" to interplead the funds into a court of competent jurisdiction, and Defendant Fryer has previously refused to do so.

114.

The Liberty Harbor Defendants and Defendant Fryer as "Escrow Agent" refused to return the earnest money pursuant to Section 2(a) of the Agreement.

115.

Consequently, Named Plaintiffs is hereby demanding the immediate return of the earnest monies plus all interest to Named Plaintiffs.

116.

Alternatively, Named Plaintiffs invite Defendant Fryer as "Escrow Agent" to interplead the funds into the registry of this Court.

## COUNT FOUR—BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

117.

Named Plaintiffs respectfully incorporates all preceding paragraphs of this Complaint as if repeated here verbatim.

118.

Named Plaintiffs and the Liberty Harbor Defendants are parties to the Agreements which are contracts by which all parties are bound to perform and consideration was given and by which all parties are bound by the covenant of good faith and fair dealing in the performance of their obligations thereunder.

119.

The Liberty Harbor Defendants breached the Agreement by falsely communicating about aspects of the contract, including, specifically, by sending Named Plaintiffs and all putative members of the class a fraudulent notice and fraudulently inducing Named Plaintiffs and all others similarly situated to either forfeit the earnest money by allegedly breaching the agreement or by paying an Additional Deposit.

120.

Named Plaintiffs and all others similarly situated have been damaged by this breach of contract in an amount to be proven at trial.

## COUNT FIVE—FRAUD

### 121.

Named Plaintiffs respectfully incorporates all preceding paragraphs of this Complaint as if repeated here verbatim.

### 122.

The Liberty Harbor Defendants falsely represented to Named Plaintiffs and all others similarly situated that construction on their Condominium units had commenced.

### 123.

The Liberty Harbor Defendants possessed scienter when making these statements because they knew that construction had not commenced.

### 124.

The Liberty Harbor Defendants intended to induce Named Plaintiffs and all others similarly situated to pay additional earnest money to Defendant Fryer as "Escrow Agent" or to breach the Agreement and forfeit their original earnest money.

### 125.

Named Plaintiffs and all others similarly situated justifiably relied on the Liberty Harbor Defendants' false representations by either paying the additional earnest money or by deciding not to pay the additional earnest money and forfeiting their original earnest money.

### 126.

Named Plaintiffs and all others similarly situated have incurred and are entitled to damages as a result of the Liberty Harbor Defendants' fraud because Named Plaintiffs and all

others similarly situated have either not had the use of their money paid as additional earnest money or because they allegedly breached the Agreement and allegedly forfeited their original earnest money. Such damages are in an amount to be proven at trial.

## COUNT SIX—FRAUDULENT INDUCEMENT

### 127.

Named Plaintiffs respectfully incorporates all preceding paragraphs of this Complaint as if repeated here verbatim.

### 128.

The Liberty Harbor Defendants knowingly misrepresented to Named Plaintiffs and all others similarly situated that construction on their Condominium had commenced.

### 129.

In reliance on the Liberty Harbor Defendants' fraudulent representations, Named Plaintiffs Miller and all others similarly situated deposited an Additional Deposit representing 10% of the purchase price of his unit in earnest money with Defendant Fryer as "Escrow Agent" pursuant to the Agreement.

### 130.

Also, in reliance on the Liberty Harbor Defendants' fraudulent representations, Named Plaintiffs Kane, Angrisani, and Layford and all others similarly situated refused to deposit an Additional Deposit of earnest money and allegedly breached their Agreements.

### 131.

After inducing Named Plaintiffs and all others similarly situated to allegedly breach and forfeit the original money, the Liberty Harbor Defendants have failed and refused to perform under the Agreement.

## COUNT SEVEN– PUNITIVE DAMAGES

### 132.

Named Plaintiffs respectfully incorporate all preceding paragraphs of this Complaint as if repeated here verbatim.

### 133.

The Liberty Harbor Defendants have acted in bad faith and have continued to cause Named Plaintiffs and all others similarly situated to incur unnecessary trouble and expense in attempting to collect the earnest money amounts.

### 134.

The Liberty Harbor Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care raising the presumption of conscious indifference to consequences and authorizing an award of punitive damages for which the Liberty Harbor Defendants are liable.

### 135.

By fraudulently inducing Named Plaintiffs and all others similarly situated to either pay an additional earnest money or to breach and forfeit the original earnest money after providing a fraudulent notice of construction of commencement and then refusing to return the earnest money when confronted with their fraudulent conduct, the Liberty Harbor Defendants acted with willful misconduct, malice, fraud, wantonness, and the entire want of care giving rise to a presumption to the conscious disregard of the consequences and authorizing an award of punitive damages.

## COUNT EIGHT —DEMAND FOR ATTORNEY'S FEES AND COSTS

136.

The Liberty Harbor Defendants have acted in bad faith and been stubbornly litigious thereby causing Named Plaintiffs and all others similarly situated to incur attorneys' fees.

137.

The Liberty Harbor Defendants are aware that they owe Named Plaintiffs and all others similarly situated their respective amounts of earnest money plus interest for their default of the Agreements. Defendants have not tendered this amount in a timely manner forcing Named Plaintiffs and all others similarly situated to expend time and effort in resolving this matter.

138.

Accordingly, pursuant to O.C.G.A. § 13-6-11, Named Plaintiffs and all others similarly situated are entitled to recover their attorneys' fees and costs in an amount to be proven at trial.

WHEREFORE, in light of the aforementioned factual allegations and claims, Named Plaintiffs request, for themselves and all other members of the class that:

a)      That process issue, directed to all Defendants and requiring them to answer, as provided by law in such case;

b)      The class be certified as a class;

c)      The rights of the class members be adjudicated and declared;

d)      That the Court issue a temporary restraining order declaring that all of the funds held in escrow by Defendant Fryer as "Escrow Agent" on behalf of Named Plaintiffs and all others similarly situated are assets of Named Plaintiffs and all others similarly situated, are not the assets of any Defendants in any way, cannot be made a part of any bankruptcy matter of

any Defendants or any other related entity, cannot be seized by any lender of any Defendants, and cannot be jeopardized by any conduct of any Defendants;

e)     That the Court set down a time for a hearing for a preliminary injunction in this cause;

f)     That upon said hearing in this cause that the Court issue an preliminary injunction ordering Defendant Fryer as "Escrow Agent" to immediately release the escrowed funds held on behalf of Named Plaintiffs and others similarly situated to the registry of the Court or to Named Plaintiffs' counsel's trust account for appropriate disbursement to Named Plaintiffs and others similarly situated; prohibiting the Liberty Harbor Defendants from refusing to authorize Defendant Fryer as "Escrow Agent" to release the full amounts of the escrowed funds held on behalf of Named Plaintiffs and others similarly situated; ordering the Liberty Harbor Defendants to provide written authorization to Defendant Fryer as "Escrow Agent" for Defendant Fryer as "Escrow Agent" to immediately release the escrowed funds held on behalf of Named Plaintiffs and others similarly situated to the registry of the Court or to Named Plaintiffs' counsel's trust account for appropriate disbursement to Named Plaintiffs and others similarly situated; and making permanent the Court's declaration that such funds held in escrow by Defendant Fryer as "Escrow Agent" on behalf of Named Plaintiffs and all others similarly situated remain assets of Named Plaintiffs and all others similarly situated, are not the assets of any Defendants in any way, cannot be made a part of any

bankruptcy matter of any Defendants or any other related entity, cannot be seized by any lender of any Defendants, and cannot be jeopardized by any conduct of any Defendants; and

g)  That this Court enter an order requiring Defendant Fryer as "Escrow Agent" and the Liberty Harbor Defendants to return all earnest monies plus interest to Named Plaintiffs and all other members of the class;

h)  That this Court enter an order granting the appropriate respective amounts of earnest money to the Named Plaintiffs and all other members of the class as damages incurred;

i)  That punitive damages be awarded to Named Plaintiffs and all other members of the class;

j)  That this Court enter an order requiring the Liberty Harbor Defendants to pay for or reimburse Named Plaintiffs and all other members of the class for all attorney's fees and costs of litigation associated with this action; and

k)  That Named Plaintiffs and all other members of the class have all other and further relief deemed just and appropriate by this Court.


RESPECTFULLY SUBMITTED, this 8th day of July, 2010.

GILBERT, HARRELL,
SUMERFORD & MARTIN, P.C.


BY:/s/ Mark D. Johnson
Mark D. Johnson
State Bar No. 395041
James L. Roberts, IV
State Bar No. 608580

Taylor H. Haley
State Bar No. 001693


ATTORNEYS FOR NAMED
PLAINTIFFS and all others similarly
situated

P.O. Box 190
Brunswick, GA  31521-0190
(912) 265-6700

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | |
|---|---|
| TIMOTHY F. KANE, CARMINE ANGRISANI, ) <br> JOANNE LAYFORD, GEORGE MILLER, ) <br> and all others similarly ) <br> situated, ) <br> ) <br>      Named Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HARBOR DEVELOPMENT, L.P., LIBERTY ) <br> HARBOR DEVELOPMENT, INC., GARY ) <br> WAXMAN, and THE FRYER LAW FIRM, P.C. ) <br> in its capacity as Escrow Agent ) <br> ) <br>      Defendants. ) | COMPLAINT-CLASS ACTION <br><br><br><br><br> CIVIL ACTION NO. |

---

## VERIFICATION

Personally appeared before me, the undersigned officer duly authorized by law to administer oaths, CARMINE ANGRISANI, Named Plaintiff., who after being duly sworn, says and deposes that the facts contained in the foregoing COMPLAINT, are true and correct.

This _____ day of July, 2010.


                                /s/ Carmine Angrisani
                                Carmine Angrisani


Sworn to and subscribed before
me this _____ day of July, 2010.


_____
NOTARY PUBLIC

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| TIMOTHY F. KANE, CARMINE ANGRISANI, ) <br> JOANNE LAYFORD, GEORGE MILLER, ) <br> and all others similarly ) <br> situated, ) <br> ) <br> Named Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HARBOR DEVELOPMENT, L.P., LIBERTY ) <br> HARBOR DEVELOPMENT, INC., GARY ) <br> WAXMAN, and THE FRYER LAW FIRM, P.C. ) <br> in its capacity as Escrow Agent ) <br> ) <br> Defendants. ) | COMPLAINT-CLASS ACTION <br><br><br><br><br><br> CIVIL ACTION NO. |

---

## <u>VERIFICATION</u>

Personally appeared before me, the undersigned officer duly authorized by law to administer oaths, TIMOTHY F. KANE, Named Plaintiff., who after being duly sworn, says and deposes that the facts contained in the foregoing COMPLAINT, are true and correct.

This _____ day of July, 2010.


/s/ Timothy F. Kane
Timothy F. Kane


Sworn to and subscribed before
me this _____ day of July, 2010.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| TIMOTHY F. KANE, CARMINE ANGRISANI, | ) | |
| JOANNE LAYFORD, GEORGE MILLER, | ) | |
| and all others similarly | ) | COMPLAINT-CLASS ACTION |
| situated, | ) | |
| | ) | |
| Named Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| HARBOR DEVELOPMENT, L.P., LIBERTY | ) | |
| HARBOR DEVELOPMENT, INC., GARY | ) | |
| WAXMAN, and THE FRYER LAW FIRM, P.C. | ) | |
| in its capacity as Escrow Agent | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFICATION

Personally appeared before me, the undersigned officer duly authorized by law to administer oaths, JOANNE LAYFORD, Named Plaintiff., who after being duly sworn, says and deposes that the facts contained in the foregoing COMPLAINT, are true and correct.

This _____ day of July, 2010.

/s/ Joanne Layford _____
Joanne Layford

Sworn to and subscribed before
me this _____ day of July, 2010.

_____
NOTARY PUBLIC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| TIMOTHY F. KANE, CARMINE ANGRISANI, | ) | |
| JOANNE LAYFORD, GEORGE MILLER, | ) | |
| and all others similarly | ) | COMPLAINT-CLASS ACTION |
| situated, | ) | |
| | ) | |
| Named Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| HARBOR DEVELOPMENT, L.P., LIBERTY | ) | |
| HARBOR DEVELOPMENT, INC., GARY | ) | |
| WAXMAN, and THE FRYER LAW FIRM, P.C. | ) | |
| in its capacity as Escrow Agent | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFICATION

Personally appeared before me, the undersigned officer duly authorized by law to administer oaths, GEORGE MILLER, Named Plaintiff., who after being duly sworn, says and deposes that the facts contained in the foregoing COMPLAINT, are true and correct.

This _____ day of July, 2010.


/s/ George Miller_____
George Miller


Sworn to and subscribed before
me this _____ day of July, 2010.

_____
NOTARY PUBLIC